| UNITED STATES DISTRICT COURT | EASTERN DISTRICT OF TEXAS |

| UNITED STATES OF AMERICA | § | |
|---|---|---|
| | § | |
| *versus* | § | CASE NO.  1:14-CR-48 |
| | § | |
| CAMMORN JOSEPH BRIZENDINE | § | |

### MEMORANDUM AND ORDER

Pending before the court is Defendant Cammorn Joseph Brizendine's ("Brizendine") *pro se* Letter for Compassionate Release (#80), wherein Brizendine seeks early release from prison in order to spend time with his mother, who allegedly has chronic obstructive pulmonary disease ("COPD").   United States Probation and Pretrial Services ("Probation") conducted an investigation and recommends that the court deny the motion.  Having considered the motion, Probation's recommendation, the record, and the applicable law, the court is of the opinion that the motion should be denied.

I.    Background

On April 23, 2014, a Criminal Complaint was filed in the Eastern District of Texas charging Brizendine with Possession of a Firearm in Furtherance of a Drug Trafficking Crime, in violation of 18 U.S.C. § 924(c), and Felon in Possession of a Firearm, in violation of 18 U.S.C. § 922(g)(1).  On May 15, 2014, a grand jury for the Eastern District of Texas returned a two-count Indictment against Brizendine that formalized the charges enumerated in the Criminal Complaint.  On November 12, 2014, Brizendine pleaded guilty to Count Two of the Indictment pursuant to a binding plea agreement.  On April 21, 2015, the court sentenced Brizendine to 46 months' imprisonment, to be served consecutively to a state sentence for unlawful possession of methamphetamine with intent to deliver, followed by a 3-year term of supervised release.

Brizendine previously filed a *pro se* Letter for Compassionate Release (#76) that advanced some of the same arguments he currently asserts, which was denied by Memorandum and Order (#77) dated January 27, 2021.  Brizendine is currently housed at United States Penitentiary Leavenworth ("USP Leavenworth"), located in Leavenworth, Kansas.  Brizendine's projected release date is December 30, 2023.

II.   Compassionate Release

On December 21, 2018, former President Trump signed the First Step Act of 2018 into law.  *See* First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194.  The Act, in part, amended 18 U.S.C. § 3582(c), which gives the court discretion, in certain circumstances, to reduce a defendant's term of imprisonment:

> (A) the court, upon motion of the Director of the Bureau of Prisons ("BOP"), or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
>> (i) extraordinary and compelling reasons warrant such a reduction; or
>>
>> (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the [BOP] that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);
>>
>> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c)(1)(A).  This provision is commonly referred to as "compassionate release."

A.      Exhaustion of Administrative Remedies

Prior to the First Step Act, only the Director of the BOP could file a motion seeking compassionate release.  *United States v. Jackson*, 27 F.4th 1088, 1089 (5th Cir. 2022); *see United States v. Franco*, 973 F.3d 465, 467 (5th Cir. 2020) ("Prior to the passage of the First Step Act . . . courts lacked the power to adjudicate motions for compassionate release."), *cert. denied*, 141 S. Ct. 920 (2020); *Tuozzo v. Shartle*, No. 13-4897, 2014 WL 806450, at *2 (D.N.J. Feb. 27, 2014) (denying petitioner's motion for compassionate release because no motion for his release was filed by the BOP).  The First Step Act amended § 3582(c) by providing a defendant the means to appeal the BOP's decision not to file a motion for compassionate release on the defendant's behalf.  *Jackson*, 27 F.4th at 1089; *United States v. Cantu*, 423 F. Supp. 3d 345, 347 (S.D. Tex. 2019); *United States v. Bell*, No. 3:93-CR-302-M, 2019 WL 1531859, at *1 (N.D. Tex. Apr. 9, 2019).  The plain language of the statute, however, makes it clear that the court may not grant a defendant's motion for compassionate release unless the defendant has complied with the administrative exhaustion requirement.  18 U.S.C. § 3582(c)(1)(A); *United States v. Garrett*, 15 F.4th 335, 337 (5th Cir. 2021) ("[T]o file a proper motion for compassionate release in the district court, a prisoner must first exhaust the available administrative avenues."); *Franco*, 973 F.3d at 467 (holding that the statutory requirement that a defendant file a request with the BOP before filing a motion for compassionate release in federal court "is *not* jurisdictional but that it *is* mandatory"); *United States v. Alam*, 960 F.3d 831, 833 (6th Cir. 2020) ("Even though [the] exhaustion requirement does not implicate [the court's] subject-matter jurisdiction, it remains a mandatory condition."); *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he exhaustion requirement . . . presents a glaring roadblock foreclosing compassionate release.").

3

Thus, before seeking relief from the court, a defendant must first submit a request to the warden of his facility to move for compassionate release on his behalf and then either exhaust his administrative remedies or wait for the lapse of 30 days after the warden received the request.  18 U.S.C. § 3582(c)(1)(A); *Garrett*, 15 F. 4th at 338 ("[A]n inmate has two routes by which he may exhaust his administrative remedies.  Both begin with 'requesting that the [BOP] bring a motion on the defendant's behalf.'" (quoting *Franco*, 973 F.3d at 467)); *United States v. Harris*, 812 F. App'x 106, 107 (3d Cir. 2020); *United States v. Springer*, 820 F. App'x 788, 791 (10th Cir. 2020) (defendant "was required to request that the BOP file a compassionate-release motion on his behalf to initiate his administrative remedies" (citing *Raia*, 954 F.3d at 595)); *Alam*, 960 F.3d at 833-34; *United States v. Soliz*, No. 2:16-190-3, 2020 WL 2500127, at *3 (S.D. Tex. May 14, 2020) ("§ 3582(c)(1)(A) does not provide this Court with the equitable authority to excuse [defendant's] failure to exhaust his administrative remedies or to waive the 30-day waiting period." (quoting *United States v. Reeves*, No. 18-00294, 2020 WL 1816496, at *2 (W.D. La. Apr. 9, 2020))).

Here, Probation reports that the BOP has no record of Brizendine ever filing a request for a reduction in sentence through the BOP.  Brizendine does not contend that he submitted such a request to the warden of the facility where he is housed and provides no documentation reflecting that he made any effort to exhaust his administrative remedies.  He also did not file a request with the BOP for a reduction in sentence in connection with his prior motion for compassionate release, but he was housed by the United States Marshal in a county jail in Texas at that time.

In this instance, Brizendine is foreclosed from obtaining relief because there is no documentation or other evidence confirming that he submitted a request for compassionate release

based on the circumstances raised in the pending motion to the warden of the facility where he is housed. *United States v. Dodd*, No. 4:13-CR-182-SDJ, 2020 WL 7396527, at *2 (E.D. Tex. Dec. 17, 2020) (stating that "[i]n order to exhaust her administrative remedies, a prisoner must first present to the BOP the same grounds warranting release that the prisoner urges in her motion"). The court is without authority to waive the exhaustion of administrative remedies or the 30-day waiting period. *See Franco*, 973 F.3d at 468 ("Congress has commanded that a 'court *may not* modify a term of imprisonment' if a defendant has not filed a request with the BOP."); *Alam*, 960 F.3d at 832 ("[B]ecause this exhaustion requirement serves valuable purposes (there is no other way to ensure an orderly processing of applications for early release) and because it is mandatory (there is no exception for some compassionate-release requests over others), we must enforce it."); *United States v. Garcia*, No. CR 2:18-1337, 2020 WL 3000528, at *3 (S.D. Tex. June 2, 2020) ("While the Court sympathizes with Defendant's plight, because he has failed to comply with the exhaustion requirements under § 3582, his motion is not ripe for review, and the Court is without jurisdiction to grant it."); *United States v. Garcia-Mora*, No. CR 18-00290-01, 2020 WL 2404912, at *2 (W.D. La. May 12, 2020) ("Section 3582(c)(1)(A) does not provide [the court] with the equitable authority to excuse [the defendant's] failure to exhaust his administrative remedies or to waive the 30-day waiting period."); *United States v. Collins*, No. CR 04-50170-04, 2020 WL 1929844, at *2 (W.D. La. Apr. 20, 2020); *see also Ross v. Blake*, 578 U.S. 632, 639 (2016) ("[J]udge-made exhaustion doctrines . . . remain amenable to judge-made exceptions," whereas "mandatory exhaustion statutes . . . establish mandatory exhaustion regimes, foreclosing judicial discretion."). Accordingly, at this time, the court does not have the authority to grant the relief Brizendine requests, and his motion is subject to dismissal. Moreover, even if Brizendine

had complied with the exhaustion requirement before filing the current motion, nothing in his motion indicates that extraordinary and compelling reasons exist to release him from confinement.

B.    Criteria for Release

The United States Court of Appeals for the Fifth Circuit has held that when a defendant moves for compassionate release, he must establish three criteria. *United States v. Rollins*, 53 F.4th 353, 358 (5th Cir. 2022) ("[A] prisoner seeking compassionate release must overcome three hurdles." (quoting *Jackson*, 27 F.4th at 1089)); *United States v. Shkambi*, 993 F.3d 388, 392 (5th Cir. 2021).   First, he must meet one of two conditions listed in § 3582(c)(1)(A)—either the defendant has extraordinary and compelling reasons that warrant a reduction under 18 U.S.C. § 3582(c)(1)(A)(i) or the defendant is at least 70 years of age, has served at least 30 years in prison, and meets the additional requirements of 18 U.S.C. § 3582(c)(1)(A)(ii). *Rollins*, 53 F.4th at 358; *Shkambi*, 993 F.3d at 391.  Second, the defendant "must show that compassionate release is consistent with the applicable policy statements from the [United States Sentencing Commission ("Commission")]."   *Shkambi*, 993 F.3d at 392; *accord Rollins*, 53 F.4th at 358.   Third, the defendant "must convince the district judge to exercise discretion to grant the motion after considering the § 3553(a) factors."[1]  *Shkambi*, 993 F.3d at 392; *accord Rollins*, 53 F.4th at 358;

---

[1] Section 3553(a) directs courts to consider:  the nature and circumstances of the offense and the defendant's history and characteristics; the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; the need to deter criminal conduct; the need to protect the public; the need to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; the kinds of sentences and sentencing ranges established for defendants with similar characteristics under applicable United States Sentencing Guideline ("U.S.S.G.") provisions and policy statements; any pertinent policy statement of the Commission in effect on the date of sentencing; the need to avoid unwarranted disparities among similar defendants; and the need to provide restitution to the victim.  18 U.S.C. § 3553(a).

*United States v. Keys*, 846 F. App'x 275, 276 (5th Cir.), *cert. denied*, 142 S. Ct. 299 (2021);

*United States v. Cooper*, 996 F.3d 283, 287 (5th Cir. 2021).

Section 3582(c)(1)(A)(i) does not define the "extraordinary and compelling reasons" that may merit compassionate release. Rather, Congress elected to delegate its authority to the Commission. *See* 28 U.S.C. § 994(t) (directing the Commission to "describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples"); *Jackson*, 27 F.4th at 1090; *Cooper*, 996 F.3d at 287; *Shkambi*, 993 F.3d at 392. Prior to the passage of the First Step Act, the Commission issued a policy statement set forth in U.S.S.G. § 1B1.13, which, along with its commentary, describes the reasons that qualify as extraordinary and compelling.[2] However, § 1B1.13 references only motions filed by "the Director of the [BOP]"—not an individual defendant.[3] Consequently, the Fifth Circuit has held that when a defendant files a motion for compassionate release on his own behalf, the Commission's policy statement set forth in § 1B1.13 is not applicable because that policy statement governs only motions filed by the Director of the BOP. *See Jackson*, 27 F.4th at 1090; *Cooper*, 996 F.3d at 287-88; *Shkambi*, 993 F.3d at 392.

---

[2] In Application Note 1 to § 1B1.13 of the U.S.S.G., the Commission defined "extraordinary and compelling reasons" to include the following four categories of circumstances: (i) certain medical conditions of the defendant; (ii) the defendant is 65 years or older and meets other requirements; (iii) the defendant's family has specified needs for a caregiver; and (iv) other reasons in the defendant's case that establish an extraordinary and compelling reason. U.S.S.G. § 1B1.13 cmt. n.1.

[3] U.S.S.G. § 1B1.13 was last amended on November 1, 2018. Until recently, the Commission has been unable to amend § 1B1.13 to incorporate the changes wrought by the First Step Act due to the lack of a quorum. The Commission consists of seven voting members and, per statute, requires four members for a quorum to amend the guidelines. 28 U.S.C. §§ 991(a), 994(a). On August 4, 2022, the United States Senate confirmed seven new members to the Commission. Although the Commission now has a quorum for the first time in over three years, it has not promulgated any additional policy statements or amendments to the guidelines.

Nevertheless, while recognizing that they are not binding, the court views the Commission's policy statement contained in § 1B1.13 and the commentary thereto as providing guidance regarding the types of reasons that may be deemed sufficiently "extraordinary and compelling" to warrant compassionate release.  *See United States v. Thompson*, 984 F.3d 431, 433 (5th Cir.) ("Although not dispositive, the commentary to § 1B1.13 informs [the court's] analysis as to what reasons may be sufficiently 'extraordinary and compelling' to merit compassionate release."), *cert. denied*, 141 S. Ct. 2688 (2021); *United States v. Rivas*, 833 F. App'x 556, 558 (5th Cir. 2020) (upholding denial of compassionate release and recognizing that the court was guided in its analysis by the commentary to U.S.S.G. § 1B1.13).  A review of dictionary definitions also sheds light on the meaning of these terms.  The word "extraordinary" is defined as "going beyond what is usual, regular, or customary . . . exceptional to a very marked extent," whereas the word "compelling" is defined as "forceful . . . demanding attention . . . convincing." *Extraordinary*, MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY (11th ed. 2007); *Compelling*, MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY (11th ed. 2007); *see United States v. Mitchell*, No. 15-20609, 2021 WL 1827202, at *2 (E.D. Mich. May 7, 2021).  "Courts have interpreted 'extraordinary' in the context of compassionate release as 'beyond what is usual, customary, regular, or common,' and a 'compelling reason' as 'one so great that irreparable harm or injustice would result if the relief is not granted.'" *Mitchell*, 2021 WL 1827202, at *2 (quoting *United States v. Murphy*, No. 15-20411, 2020 WL 2507619, at *5 (E.D. Mich. May 15, 2020); *United States v. Sapp*, No. 14-20520, 2020 WL 515935, at *3 (E.D. Mich. Jan. 31, 2020)).

1.    Family Circumstances

Brizendine, age 33, contends that his family circumstances, specifically his wish to spend time with his 55-year-old mother who has COPD, present extraordinary and compelling reasons that justify compassionate release.  Brizendine explains that although he is "almost done" with his sentence, "I dont (sic) want to lose my mother Befor (sic) I make it home!"  He presents no information or documentation, however, concerning his mother's medical condition or her prognosis.  He merely states that his mother has suffered from COPD for the past 5 years and "its (sic) getting worse on her."  As explained above, although the court is not bound by § 1B1.13 or the commentary thereto, the court views the commentary as informative of its analysis as to what reasons may be sufficiently extraordinary and compelling to merit compassionate release.  *See Shkambi*, 993 F.3d at 392; *see also Thompson*, 984 F.3d at 433; *Rivas*, 833 F. App'x at 558.

The U.S.S.G. acknowledge that extraordinary and compelling reasons may exist with respect to a defendant's family circumstances, under the following conditions:  (i) "[t]he death or incapacitation of the caregiver of the defendant's minor child or minor children" or (ii) "[t]he incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner."  U.S.S.G. § 1B1.13 cmt. n.1(C)(i)-(ii).  While the U.S.S.G. do not provide a definition of "incapacitation," "[f]or guidance [on what constitutes] 'incapacitation,' courts look to the BOP's non-binding Program Statement for processing compassionate release requests."  *United States v. White*, No. CR16-40, 2021 WL 1721016, at *4 (E.D. La. Apr. 30, 2021); *United States v. Bolden*, No. 16-320, 2020 WL 4286820, at *4 (W.D. Wash. July 27, 2020) (consulting the BOP's relevant Program Statement for guidance); *United States v. Doolittle*, No. 19-501, 2020 WL 4188160, at *2 (D.N.J. July 21,

9

2020) (same); *United States v. Collins*, No. 15-10188, 2020 WL 136859, at \*4 n.13 (D. Kan. Jan. 13, 2020) (noting that although the Program Statement is specifically meant for use by the BOP, it "provide[s] guidance for courts as well").

In this situation, Brizendine's desire to spend time with his mother does not amount to an extraordinary and compelling reason warranting compassionate release.  *See United States v. Phillips*, No. 13-286, 2021 WL 4476819, at \*4 (E.D. La. Sept. 30, 2021) (finding defendant's family circumstances did not merit compassionate release and rejecting the notion that the situation was extraordinary and compelling where he claimed his elderly parents were both battling cancer and had no one to care for them); *United States v. McMurray*, No. 3:12-cr-00360-HZ-1, 2021 WL 4473403, at \*2 (D. Ore. Sept. 29, 2021) (denying compassionate release for defendant to care for his mother who suffered from debilitating mental and physical health conditions, was unable to care for herself, lived with significant pain, and other family members could offer only limited support due to their jobs and other commitments); *United States v. Cephus*, No. 2:09 CR 43, 2021 WL 3884829, at \*2-3 (N.D. Ind. Aug. 31, 2021) (joining a number of other district courts who were not persuaded that caring for elderly or ill parents constitutes an extraordinary and compelling reason warranting compassionate release and finding that defendant's "aging and sick mother" who had undergone quadruple bypass surgery, suffered from coronary artery disease, and had frequent heart palpitations was not an "extraordinary" circumstance); *United States v. Silverlight*, No. 4:12-CR-201-YGR, 2021 WL 1736864, at \*3 (N.D. Cal. May 3, 2021) (holding that defendant's arguments for "release to care for members of her family [including her minor children] do not rise to the level of 'extraordinary and compelling' circumstances warranting

reduction of her sentence"); *United States v. Francisco-Ovalle*, No. 18-CR-526-AJN, 2021 WL 123366, at *3 (S.D.N.Y. Jan. 13, 2021) ("Defendant's desire to provide financial support for his family, while . . . admirable, applies broadly to incarcerated persons and does not in itself provide extraordinary and compelling reasons justifying release."); *United States v. Goldberg*, No. CR 12-180 (BAH), 2020 WL 1853298, at *4 (D.D.C. Apr. 13, 2020) (noting that a desire to care for one's elderly parents does not constitute an extraordinary and compelling reason because "[m]any, if not all inmates, have aging and sick parents." (quoting *United States v. Ingram*, No. 2:14-cr-40, 2019 WL 3162305, at *2 (S.D. Ohio July 16, 2019))).   Like the defendant in *McMurray*, Brizendine "committed a serious offense that carried a significant sentence.  A consequence of that sentence is not being available to support family members as he desires."   *United States v. McMurray*, No. 3:12-CR-360-HZ-1, 2021 WL 4473403, at *2 (D. Or. Sept. 29, 2021).

Moreover, Brizendine has not demonstrated that he is the only available caregiver for his mother.  *See Phillips*, 2021 WL 4476819, at *4 (denying compassionate release and remarking that defendant had provided no evidence that he was the only person who could care for his parents where the record reflected that at one time he had several siblings in the area); *United States v. Shabazz*, Crim. Action No. 17-43 (JDB), 2021 WL 4306129, at *3 (D.D.C. Sept. 22, 2021) (denying compassionate release where the defendant had not shown that he was the only available caregiver for his elderly mother, that his release was the only option for his mother's care, or that his situation was so rare as to qualify as "extraordinary"); *United States v. Crandle*, No. 10-35, 2020 WL 2188865, at *4 (M.D. La. May 6, 2020) (denying request for relief and noting that "the court has before it no information as to why other relatives cannot care for [the

defendant's] parents").  Brizendine's Presentence Investigation Report ("PSR") indicates that he has four siblings, all of whom are now adults, who reside with or near his mother in Southeast Texas.  In addition, he provides no information regarding the type of care his mother needs.  In fact, he does not contend that he actually wants to take care of her—he just wishes to see her after he is released from prison.  Hence, Brizendine's family circumstances do not amount to an extraordinary and compelling reason warranting his release from confinement.

> 2.   Rehabilitation

Brizendine suggests that his post-sentence rehabilitation also establishes an extraordinary and compelling reason for his early release from prison.  He states that he has spent the past 9½ years in prison and that he has "grown up these last few years a lot!"  He explains that he has completed courses in HVAC and received some training in pest control.  Brizendine further maintains, "I don't get in trouble here," and claims that he "only had 1 Indecent (sic) report during his fed[eral] sentence."  He adds, "I am changing, I want to change and I'm asking also your help to change into a Better person."

While the court may consider rehabilitation efforts, "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason."  28 U.S.C. § 994(t); *see Shkambi*, 993 F.3d at 392; *United States v. Brooker*, 976 F.3d 228, 237-38 (2d Cir. 2020) (holding that a district court's discretion in sentencing is broad; however, there is a "statutory limit on what a court may consider to be extraordinary and compelling . . . [and] '[r]ehabilitation . . . alone shall not be considered an extraordinary and compelling reason.'" (quoting 28 U.S.C. § 994(t))); *United States v. Hudec,* No. CR 4:91-1-1, 2020 WL 4925675, at *5 (S.D. Tex. Aug.

19, 2020) ("While the Court is permitted to consider post-sentencing rehabilitation in determining whether to grant an eligible defendant a sentence reduction, it is not authorized to grant a reduction based upon post-sentencing rehabilitation alone."). In fact, "[m]aking good use of one's time in prison is not uncommon, and indeed is expected." *United States v. Blanco*, No. 16-CR-408 (CS), 2021 WL 706981, at *2 (S.D.N.Y. Feb. 22, 2021) (quoting *United States v. Alvarez*, No. 89-CR-229, 2020 WL 4904586, at *7 (E.D.N.Y. Aug. 20, 2020)).

Yet, contrary to his assertions, Brizendine has not maintained a clean disciplinary record since being imprisoned. Instead, Probation reports that he has incurred two disciplinary violations while serving his federal sentence, one for possessing an unauthorized item and another for fighting with another person, noting that he received sanctions for both incidents. Thus, although Brizendine has reportedly completed some vocational training and has expressed a desire to change, he has not presented sufficiently extraordinary and compelling accomplishments or circumstances to merit compassionate release under the facts of this case. *See United States v. Lewis*, No. 17-CR-28-FPG, 2021 WL 4519795, at *3 (W.D.N.Y. Oct. 4, 2021) (finding defendant's efforts at rehabilitation and plans to start a new life elsewhere to be commendable and recognizing the unusual burdens he faced in prison but finding those considerations not to undermine the factors that led to his original sentence—his offense, his criminal history, and the need for deterrence); *see also United States v. Boyd*, No. 3:17-CR-37-TAV-DCP-4, 2021 WL 5094903, at *4 (E.D. Tenn. Nov. 2, 2021) (the court, while recognizing defendant's efforts to improve himself, did not find his rehabilitation efforts to be so extraordinary as to outweigh the other sentencing factors); *United States v. Willsey*, No. 3:00-cr-00438-HZ, 2021 WL 4462889,

13

at *2 (D. Ore. Sept. 28, 2021) (although finding defendant's steps toward rehabilitation to be laudable, the court ruled that they did not present an extraordinary circumstance that would justify compassionate release, particularly given the seriousness of his offenses of conviction including multiple counts of armed bank robbery); *United States v. Rounds*, No. 10-CR-239S (2), 2021 WL 4437170, at *4 (W.D.N.Y. Sept. 28, 2021) (commenting that defendant's efforts at rehabilitating himself were laudable and should be continued, but concluding that they did not alone or in combination with his other arguments constitute an extraordinary and compelling reason for compassionate release).  Similarly, the court hopes that Brizendine will continue on the path to rehabilitation, but declines to exercise its discretionary authority under § 3582 based on his rehabilitation efforts.  *See Lewis*, 2021 WL 4519795, at *3.

      C.     <u>Section 3553(a) Factors</u>

The court further finds that compassionate release is not merited in light of the applicable factors set forth in 18 U.S.C. § 3553(a).  *See* 18 U.S.C. § 3582(c)(1)(A) (requiring courts to consider the § 3553(a) factors before granting compassionate release); *Rollins*, 53 F.4th at 358-59; *United States v. Shorter*, 850 F. App'x 327, 328 (5th Cir. 2021) (finding that the court did not abuse its discretion in denying compassionate release after balancing the § 3553(a) factors); *Keys*, 846 F. App'x at 276; *Shkambi*, 993 F.3d at 392; *Thompson*, 984 F.3d at 435 n.11 (collecting cases); *United States v. Chambliss*, 948 F.3d 691, 693-94 (5th Cir. 2020).  Brizendine's offense of conviction arises from his unlawful possession of a firearm by a convicted felon, as detailed in his PSR.  While officers were investigating a report of drug activity occurring at a motel, they observed Brizendine exiting the motel room in question.  Officers made contact with Brizendine,

who was visibly shaking and having trouble standing.  During the encounter, Brizendine gave officers four different false names and dates of births and also stated that he had just ingested methamphetamine and was panicking.  Brizendine further admitted he was at the motel room to purchase methamphetamine and a handgun.  Subsequently, officers executed a search of the motel room and discovered a silver, Smith and Wesson, Model 60, .38 caliber revolver hidden under a bed, as well as ammunition, three small bags containing a total of 1.325 grams of methamphetamine next to the gun, and drug paraphernalia.  Officers also found several images of Brizendine holding the firearm stored on his cell phone.

Brizendine has an extensive criminal history which includes prior convictions for criminal trespass, burglary of a habitation, aggravated sexual assault, failure to register as a sex offender, possession of a controlled substance (methamphetamine), and unlawful possession of a controlled substance with intent to deliver (methamphetamine).  Brizendine was also affiliated with and served as an officer in a white supremacist gang, the Solid Wood Soldiers.  Additionally, he has a lengthy history of mental health problems and of poly-substance abuse, including the frequent use of marijuana and methamphetamine.  A 2014 psychological report from the BOP indicates a use of force incident occurred while Brizendine was in custody at the Livingston IAH facility.  He became enraged and verbally threatened staff, including the warden, after he was asked to end a social telephone call.  Probation reports that BOP records reflect that Brizendine has been assessed as posing a high risk of recidivism.

"Compassionate release is discretionary, not mandatory, and [may] be refused after weighing the sentencing factors of 18 U.S.C. § 3553(a)."  *Chambliss*, 948 F.3d at 693; *see*

*Rollins*, 53 F.4th at 358-60 (upholding the denial of compassionate release of the defendant, who suffered from a "dire" medical situation stemming from a gunshot wound that required the amputation of his right leg and left him paralyzed, and deferring to the district court's balancing of the § 3553(a) factors, including the defendant's "history, the serious nature of his offense, and the danger his release would pose to the community at-large"); *United States v. Gharib*, No. 21-40779, 2022 WL 1565352, at *1 (5th Cir. May 18, 2022).   Where, as here, a prisoner has engaged in "severe" criminal conduct and has an extensive criminal history, the district court has discretion to deny compassionate release under the circumstances.   *Chambliss*, 948 F.3d at 693-94; *accord Rollins*, 53 F.4th at 358-60; *Gharib*, 2022 WL 1565352, at *1 (refusing to consider the defendant's contention that extraordinary and compelling reasons justified compassionate release due to the defendant's no longer being subject to the career offender enhancement when district court found that the § 3553(a) factors outweighed granting relief); *Keys*, 846 F. App'x at 276 (rejecting Defendant's argument that the court gave too much weight to his criminal history and finding that "a mere disagreement with the court's balancing of the § 3553(a) factors . . . is not a sufficient ground for reversal").   In view of the nature and circumstances of Brizendine's offense of conviction, his failure to abide by institutional rules while incarcerated, and his extensive criminal history, the court cannot conclude that Brizendine's early release from prison would afford adequate deterrence or protect the public, as he continues to pose a danger to other persons and to the community as a whole.

As the court noted in *United States v. Preston*, "[t]he best predictor of how [Defendant] will behave if he were to be released is how he behaved in the past, and his track record is a poor

one." No. 3:18-CR-307-K, 2020 WL 1819888, at *4 (N.D. Tex. Apr. 11, 2020) (quoting *United States v. Martin*, 447 F. Supp. 3d 399, 403 (D. Md. 2020)).  Here, Brizendine's track record is similarly a poor one.  In this instance, there is no reason to believe that Brizendine would not revert to engaging in drug distribution activities, assaultive behavior, the possession of firearms, and other unlawful activities if released from prison at this time.

III.   <u>Conclusion</u>

In sum, Brizendine has failed to satisfy his burden of showing the necessary circumstances to warrant relief under the statutory framework to which the court must adhere.  The sentence imposed upon Brizendine comports with the 18 U.S.C. § 3553(a) factors, and he has adduced no extraordinary and compelling reasons to lessen his sentence or release him from prison at this juncture.  Neither his concerns about his mother's health nor his efforts at rehabilitation merit compassionate release under these circumstances.

In accordance with the foregoing analysis, Brizendine's *pro se* Letter for Compassionate Release (#80) is DENIED.  In the alternative, Brizendine's motion is DISMISSED for failure to exhaust his administrative remedies.

SIGNED at Beaumont, Texas, this 25th day of January, 2023.

_____
MARCIA A. CRONE
UNITED STATES DISTRICT JUDGE